**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

ANGELA COVEY,                )
                             )
            Plaintiff,       )
                             )
v.                           )        Case No. CIV-11-390-RAW
                             )
SYSTEM S.P.A., et al.,       )
                             )
            Defendants.      )

## FINDINGS AND RECOMMENDATION

This matter comes before the Court on hearing to determine damages after a default judgment was entered against Defendants Meccanica Moderna, s.r.I and Meccanica Moderna 2, s.r.I (collectively referred to as "Meccanica Moderna"). United States District Judge Ronald White, who presides over this case, referred this matter to the undersigned for the entry of Findings and a Recommendation by Order entered February 9, 2015. To that end, this Court conducted an evidentiary hearing on July 21, 2015 to determine the amount of damages which should be assessed against Meccanica Moderna after the entry of a default judgment by Judge White by Order entered January 28, 2015.

Richard Ford appeared for Plaintiff, Defendants System S.p.A, System Group, and System Logistics were represented at the hearing by Gauri D. Nautiyal, and Brynna Schelbar appeared for intervenor Liberty Insurance. As might be expected, no appearance was entered at the hearing for the defaulting defendants, Meccanica Moderna.

On August 15, 2010, Plaintiff was injured on a packaging

machine at her place of employment, Dal-Tile, located in Muskogee, Oklahoma. Her right hand was crushed and burned on the machine when a hot welding bar fell on her requiring more than twenty surgeries. The machine which caused Plaintiff's injury was manufactured by Meccanica Moderna.

Dr. Martin L. Martucci, the pain management specialist attending Plaintiff post-surgery, testified that Claimant suffered from sympathetic maintained pain. With this condition, Plaintiff's body had readjusted to include painful signals. Even though Plaintiff's injury was four years old, Dr. Martucci stated that time would not diminish Plaintiff's pain as her nervous system continues to send pain signs such that her injuries will not heal as most injuries do.

Eventually, Plaintiff's condition required that her fifth digit be amputated. Dr. Martucci found Plaintiff would likely suffer from phantom pain because the brain continues to feel pain even though the digit is no longer present.

Dr. Martucci also testified that aside from some cancer patients who he has attended, Plaintiff's injury was one of the worst five injuries he has seen after treating an estimated ten thousand patients. He did not perceive any malingering or faking in Plaintiff's presentation of pain as her injury was easily verifiable.

Dr. Martucci opined Plaintiff would experience pain

indefinitely. To that end, she is on a pain medication regimen which includes Oxycontin, Tramadol, Lyrica, and phenergan for nausea. Plaintiff is closely monitored for abuse of these medications and Dr. Martucci did not find any of the "red flags" which would indicate abuse. Dr. Martucci stated that the objective was to reduce Plaintiff's pain but he could not eliminate it.

Dr. Martucci also testified concerning the cost of continuing pain management and treatment. He stated Plaintiff was a "self-pay" patient and that he tries to charge Plaintiff the same as would be paid by insurance. He testified as to approximately $1,150.00 monthly on follow-up care and that the charges would continue indefinitely.

Dr. Robert Kirk, a plastic and reconstructive surgeon of 30 years, performed the reconstructive surgery on Plaintiff's hand after the accident. Dr. Kirk testified that Plaintiff suffered a crushing and burning injury to her hand which affected tendons, nail beds, and bones. She suffered third and fourth degree burns. Her wound was deeper because Plaintiff could not immediately remove her hand from the machine causing the heat to cook her flesh.

The injury was through to the bone itself. When the flesh becomes irreversibly damaged, such as in Plaintiff's case, the resulting protein must be removed before the wound can be closed. Several surgeries were performed in an attempt to close the wound as efficiently as possible. Skin flaps using the skin in the area

were attempted but were not successful.  Ultimately, Plaintiff's hand was fit under the skin in her abdomen for three weeks to permit new blood vessels to grow into her hand.  After that time, Plaintiff's hand was cut from her abdomen and the skin was sewed onto her fingers.  The procedure was successful but Plaintiff was left with unsightly scars and bulky fingers.  Several operations were performed to remove the fat and extra skin from her fingers.

An infection set into Plaintiff's little finger (fifth digit) which caused it to be deformed wherein she could not straighten the finger.  This condition required that her finger be amputated.

Because of the insertion of Plaintiff's hand into her abdomen for an extended period, Plaintiff also experienced pain in her elbow and shoulder from non-use.  Plaintiff received an orthopedic referral and physical therapy.

Plaintiff experienced pain in the hand due to the placement of nerve endings.  Dr. Kirk rearranged the nerves into protected areas of the hand in an attempt to reduce pain.  After 15-20 operations, Dr. Kirk had nothing further to offer to improve Plaintiff's condition.

Dr. Kirk testified Plaintiff would experience problems indefinitely with range of motion, grip, and grip strength.  Several areas of her body were impacted by the injury and subsequent treatment including her abdomen, hand, wrist, elbow, and shoulder.  Dr. Kirk treated Plaintiff for more than three years and

found her to be compliant. He stated she would suffer constant deep pain that did not go away and which required narcotics. She would also suffer from variable pain associated with numbness and tingling. She also would suffer from increased sensitivity to cold and low temperatures and to being bumped. Plaintiff would continue to have functional limitations and a permanent impairment of motion.

In a supplemental deposition, Dr. Kirk also testified Plaintiff developed MRSA from the organisms stemming from the infection in her little finger. Additionally, Plaintiff developed a neuroma, a condition where inflammation and scar tissue form a ball which causes excessive tenderness. Dr. Kirk first attempted to treat the condition with medication but then surgically buried the nerve ball in bone or muscle. The procedure was only partially successful.

Plaintiff wears a compression glove to keep steady pressure on the injured area of her hand. The glove works against scars raising in the areas.

Dr. Kirk stated that he was not optimistic that Plaintiff's hand function would get significantly better or that her mobility would improve. She is not under a threat of losing her hand. Plaintiff also complains of insomnia, which is common with these kinds of injuries.

Plaintiff testified that she is 46 years old, married with one

son who is 20 years old.  She is a high school graduate with some college credits.  She always worked in factories with machines.  She was employed by Dal-Tile in Muskogee, Oklahoma at the time of the accident.

Plaintiff testified she is right hand dominant, which is the hand that was injured.  She stated that she has undergone 22 surgeries and procedures.  After each one, she lost the use of her arm and hand.  She is required to take anti-biotics before each surgery because of the prior occurrence of MRSA.  She relies heavily upon her husband and son to function.

Plaintiff stated that her mobility has worsened since being released by Dr. Kirk last year.  She is unable to type, write, or pick up more than five pounds.  She is financially unable to return to school.  Her worker's compensation case with her employer has been settled so she is required to pay for her medication.  She estimates her oxycontin prescription alone costs $1,000.00 per month.  She also wears a custom made compression glove which she feels protects her skin on her hand and keeps her fingers in shape.  Her skin is thin on her hand and tears easily.  Each glove costs between $325.00 and $400.00 and have to be replaced periodically.

She seeks money to help her family and maintain her care.  She receives psychiatric counseling, needs to pay for medication, and requires new gloves for her hand.

Plaintiff stated that she could not longer engage in

activities such as playing the guitar, playing golf, or playing basketball with her son.  She experiences sleep issues and has nightmares reliving the injury and being trapped by the machine.

Plaintiff testified that she would have earned $32,000.00 from her prior employer until age 72 as well as retirement benefits.  Plaintiff requires continuing and constant medication, compression gloves, and treatment for the MRSA she developed while under treatment for her injury.

Plaintiff has clearly established that she suffered significant physical and mental pain as a result of the accident and her request for $2,000,00.00 for this element of damages is reasonable.  Both the testimony offered by Plaintiff and the supporting medical opinion of Dr. Martucci demonstrates that Plaintiff has suffered and continues to suffer considerable pain as a result of her injury.  The photographic images introduced into evidence supports the request for $1,000,000.00 in disfigurement damages.  Dr. Kirk's testimony supports an award of damages for physical impairment in the amount of $1,500,000.00.  Plaintiff's testified to her yearly salary of approximately $32,000.00 per year for the remainder of her life until age 72.  Therefore, Lost earnings requested of $814,970.00 are supported by the evidence.  Plaintiff's future medical care, treatment, and services has been established at $750,000.00 as requested if only through the cost of her pain management medication.  In short, Plaintiff introduced

7

evidence to support the level of damages set forth in the affidavit which accompanied Plaintiff's request for default judgment.

IT IS RECOMMENDED that that Judgment be entered in favor of Plaintiff Angela Covey and against Defendants Meccanica Moderna 1, s.r.I and Meccanica Moderna 2, s.r.I in the total amount of $6,064,970.00.

DATED this 19th day of August, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE